IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
LODGED _____ RECEIVED

MAR 3 0 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

DARLINE D.H.                          *
BELL-ZUCCARELLI                       *
                                      *
        Plaintiff                     *
                                      *
v.                                    *   Civil No. **PJM 14-1306**
                                      *
**CITY OF GAITHERSBURG, et al.**      *
                                      *
        Defendants                    *
                                      *

## MEMORANDUM OPINION

Darline Bell-Zuccarelli, *pro se*, has sued the City of Gaithersburg, its Mayor, five members of its City Council, and three City employees for allegedly violating Bell-Zuccarelli's civil rights under the 14th Amendment to the U.S. Constitution. For the following reasons, the Court **DENIES** Bell-Zuccarelli's Motion to Exclude Exhibits, **DENIES** Bell-Zuccarelli's Motion to Amend the Complaint, **GRANTS** Defendants' Motion for Summary Judgment, **MOOTS** Defendants' Motion to Dimiss, and **DISMISSES** the case with prejudice.

### A.

According to the two-page Complaint, on January 16, 2014, the City of Gaithersburg "condemned" a 192 square foot accessory structure located on Bell-Zuccarelli's property without having inspected the property. Bell-Zuccarelli alleges that she had met the permit and inspection requirements as of September 27, 2012, and describes the "condemnation" as a malicious attempt by the City to have her tear down her shed. She adds that the City threatened her with a $500.00 fine and 90 days in jail if she failed to comply. She concedes that she has refused to make the corrections because she believes that the City approved the shed on September 27,

2012. *See* Compl. ¶¶ 12-16, ECF No. 2. More specifically, Bell-Zuccarelli alleges that the City's

alleged condemnation on January 16, 2014 "violat[ed] [her] civil right[s] under the 14th

Amendment to the Constitution as it relates to due process of law." *Id.* ¶ 12.

In March of 2014, Bell-Zuccarelli filed a Complaint in Montgomery County Circuit

Court. On April 17, 2014, the Defendants removed this case to this Court, and filed a Motion to

Dismiss, or in the alternative, for Summary Judgment. ECF No. 6. Bell-Zuccarelli then filed a

Motion to Exclude the Exhibits attached to the Defendants' Motion to Dismiss, and sought to

amend her Complaint to include a "violation of her 4th Amendment right." She alleges "that the

City of Gaithersburg seized her property with[out] a warrant and probable cause[] when the City

of Gaithersburg condemned her shed and denied her access to it." ECF No. 15.

### B.

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), "or in the alternative" for summary judgment under Federal Rule of Civil

Procedure 56. Def.'s Br., ECF No. 6-1, at 1. A motion styled in this manner implicates the

Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. Although a court

ordinarily does not consider matters outside the pleadings or resolve factual disputes when ruling

on a motion to dismiss, the court, in its discretion, may consider matters outside of the pleadings,

pursuant to Rule 12(d). *See Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524,

542 (D. Md. 2012) (*citing Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007)). If

the court does so, "the motion must be treated as one for summary judgment under Rule 56," and

"[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to

the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *See Sager*, 855 F. Supp. 2d at 542 (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998)).

Here, Bell-Zuccarelli was on notice that conversion of the Motion under Rule 12(d) might occur. Defendants' Motion was expressly captioned as a Motion "in the alternative" for Summary Judgment, Def.'s Br., ECF No. 6-1, at 1, and the Clerk of the Court sent Bell-Zuccarelli a letter informing her of that fact, attaching a copy of Rule 56. ECF No. 8. Bell-Zuccarelli acknowledged as much in her Response, in which she "request[ed] that this court deny the defendants['] motion to dismiss this case or alternative[ly] for summary judgment and allow this case to proceed to trial." ECF No. 11, at 2. She also attached two exhibits to her Response: a newspaper article and a copy of the January 16, 2014 Notice to Correct Violation. ECF Nos. 11-1, 11-2. As noted above, she also moved to exclude the exhibits attached to Defendants' Motion, because, she says, they are "unrelated to the plaintiffs complaint. [ . . .] [T]his case is a case of constitutional right violation, not [a] Maryland Residential Code violation. Residential Codes violations should be resolved at the state and county level." ECF No. 14, at ¶¶ 1-8.

A court's discretion to convert a motion to dismiss into one for summary judgment "'should be exercised with great caution and attention to the parties' procedural rights.' In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Wright & Miller, Federal Practice and Procedure § 1366, at 149, 165-67 (3d ed. 2004, 2011 Supp.)) (internal

citations omitted). But this is not a true conversion of a Motion to Dismiss because Defendants have explicitly moved "in the alternative" for summary judgment. Indeed, Defendants' challenged materials consist almost entirely of public records—most notably, building permits— issued by the City of Gaithersburg's Planning and Code Administration. Because Bell-Zuccarrelli's due process claims rise and fall based on the characteristics of her accessory structure as contemplated by these permits, consideration of the exhibits will facilitate disposition of the action. Finally, Bell-Zuccarelli does not expressly oppose proceeding under Rule 12(d), nor does she argue that discovery is needed, nor is there any reason to suppose discovery would make a particle of difference in analyzing the case. Accordingly, the Court will address Defendants' Motion as a Motion for Summary Judgment.

## C.

A brief review of the the factual and procedural history of the case follows.

On November 22, 2010, Bell-Zuccarelli submitted a Residential Improvement Permit Application to the City of Gaithersburg Planning and Code Administration. ECF No. 6-3. Her Application indicated that the Permit Type sought was a "shed," and the work description stated: "Constructing a shed in my back yard." Bell-Zuccarelli indicated that she would be doing no mechanical work on the project and that, while she was putting in outlets and wiring, she was "not putting electricity in now." She estimated the project's cost at $1000. She listed the property's zoning code as R-90. On December 16, 2010, the City issued a permit for the construction of a 140 square foot shed in the rear yard, and noted that the City might require a separate electrical permit. ECF No. 6-4. On June 6, 2012, Bell-Zuccarelli applied for a permit to "install electrical outlets and lights in shed." ECF No. 6-5.

The City inspected the shed several times over the summer, and on September 27, 2012, issued a permit marked "final." ECF No. 6-6.[1] This permit described the project as a 216 square foot "shed" and was accompanied by a permit for electrical work for "shed." Defendants have attached as exhibits photographs that they represent were taken on the date that the permit issued; these photographs depict an unfinished open space. ECF No. 6-8.

Over a year later, Gazette.net published an article in its online newspaper featuring Bell-Zuccarelli's shed. ECF No. 6-8. The article reported that Bell-Zuccarelli and her husband had in fact built a small house in Bell-Zuccarelli's backyard for her daughter to live in. The article and accompanying photographs indicated that the house had a furnished living room, kitchenette, sleeping loft, bathroom, air conditioning, and heat. The article quoted Bell-Zuccarelli's daughter saying: "The house is great . . . If she had the water hooked up, I would be more than happy to live in it."

The City became aware of these apparent features of the "shed" through the Gazette.net article, and on January 16, 2014, issued an Official Notice to Correct Violations. ECF No. 6-10.[2] The Notice ordered Bell-Zuccarelli to cease and desist the use of the accessory structure as a single family dwelling, and to cease and desist the use of the accessory structure on the grounds that it had been altered from the approved electrical and building permits. The Notice advised Bell-Zuccarelli that she had the right to immediately petition the City Board of Appeals if she felt that the notice had been issued in error.

On January 27, 2014, Bell-Zuccarelli applied for another permit to complete electrical work. ECF No. 6-11. City inspectors visited the structure on February 18, 2014 pursuant to the

---

[1] In her Complaint, Bell-Zuccarelli argues that she had "met the permit and inspection requirements on September 27, 2012" and that the shed was "approved on September 27, 2012." ECF No. 2 ¶¶ 13; 16.
[2] In her Complaint, Bell-Zuccarelli alleges that the City condemned her shed on January 16, 2014. ECF No. 2, at ¶ 12.

January 27, 2014 permit application, documented and photographed further alleged violations, and concluded that the structure was out of compliance with the permit. That same day, the City served Bell-Zuccarelli with a second Official Notice to Correct Violations. ECF Nos. 6-13; 6-14.

There is no indication in the record that Bell-Zuccarelli ever complied with either Notice to Correct Violations nor that she has sought review of either Notice pursuant the relevant City appeals process.

### D.

Rule 56 requires summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). A dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, while "a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248 (citations omitted).

Bell-Zuccarelli alleges that the Defendants violated her "civil rights under the 14th Amendment to the Constitution as it relates to due process of law," in particular, that they conspired to "condemn" the accessory structure, and that they maliciously attempted to have Bell-Zuccarelli "tear down the shed." Defendants did so, she maintains, despite the fact that Bell-Zuccarelli had met permit and inspection requirements on September 27, 2012.

The Court construes Bell-Zuccarelli's *pro se* pleading to raise a 14th Amendment due process claim under 42 U.S.C. § 1983, and accordingly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

The Due Process Clause of the 14th Amendment affords both procedural and substantive due process. The Supreme Court has held "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property," *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972), while substantive due process under the Fourteenth Amendment "forbids the government to infringe . . . 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Bell-Zuccarelli has not identified what type of due process has allegedly been denied her. As a threshold matter, she is obligated to first demonstrate the property or liberty interest at issue. If no protected property interest exists, there is no need to consider whether any alleged deprivation of that interest occurred without "due process." *See Greenspring Racquet Club, Inc. v. Baltimore Cnty., Md.*, 232 F.3d 887, at *7 (4th Cir. 2000) (affirming dismissal of substantive due process claim where plaintiff did not identify the constitutionally protected property interest at issue).

It is well established that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [The individual] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. These protected "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Thus, any cognizable property interest Bell-Zuccarelli may have in the accessory structure she seeks to vindicate stems from applicable state zoning law. *See Scott v. Greenville Cnty.*, 716 F.2d 1409,

1418 (4th Cir. 1983) ("The starting point for our inquiry is to determine whether state or local law afforded Scott a 'protectable property interest in the permit' sufficient to trigger federal due process guarantees.") (citations omitted).

In Maryland, state policy regarding land use provides that "(1) the orderly development and use of land and structures requires comprehensive regulation through the implementation of planning and zoning controls; and (2) planning and zoning controls shall be implemented by local government." Md. Code Ann., Land Use § 4-101(a). Pursuant to that policy, state law grants authority to local legislative bodies such as the City of Gaithersburg to establish and administer planning and zoning controls. To that end, in order "to ensure conformity with the intent and purpose of this division and of the local jurisdiction's zoning law, a legislative body may retain the power to approve or disapprove: (1) the design of buildings, construction, landscaping, or other improvements; and (2) changes made or to be made on the land being zoned or rezoned." Md. Code Ann., Land Use § 4-103(c). However, the legislative body's authority to require individuals to obtain design approval hinges on whether the legislative body adopts local law that includes enforcement procedures and provides notice to individuals. Md. Code Ann., Land Use § 4-103(d).

Bell-Zuccarelli's property is located in an R-90 zone which, under the Gaithersburg City Code, permits accessory structures as a use by right. City Code § 24-28(6). The Code defines an accessory structure as "[a] structure on the same lot with, and of a nature customarily incidental and subordinate to, the principal structure, and is not attached by any part of a common wall or common roof to the main building." City Code § 24-1. However, the Code also provides that in R-90 zones "not more than one single-family dwelling shall be permitted on any one lot." City Code § 24-164. A dwelling is defined as "[a] building or portion thereof arranged or designed to

provide living facilities for one or more families, excepting trailers and mobile homes." City Code § 24-1.

Bell-Zuccarelli applied for and received approval in September of 2012 for an accessory structure—a shed—pursuant to the established permitting process. However, the record plainly reveals that as of January 16, 2014, the date that the City issued the Official Notice to Correct Violations, Bell-Zuccarelli's structure far exceeded the scope of the final permit. The content and photographs of the newspaper articles cited by both parties, the City's inspection records, as well as the pictures taken by the City during an inspection of Bell-Zuccarelli's property, reveal an accessory structure with a fully furnished living room,[3] a kitchenette with a stocked refrigerator, a sleeping loft with a bed, a staircase, and a bathroom. Drawing all reasonable inferences in Bell-Zuccarelli's favor, there can be no genuine dispute that as of January 16, 2014, the accessory structure she constructed was arranged to provide living facilities for one or more families, and was therefore a "dwelling" within the meaning of the City code.[4]

Even assuming Bell-Zuccarelli had a vested property interest in the accessory structure as approved in September of 2012, she did not have such a property interest in the structure as it existed in January of 2014, the point in time that the City condemned the structure. While the City Code provides that accessory structures are a use permitted "by right" in an R-90 zone, the Code also forbids more than one single-family dwelling on one lot. Bell-Zuccarelli plainly cannot rely on the September 2012 permit for an accessory structure to claim a protected

---

[3] The Court notes the presence of a decorative wooden sign hanging on the living room wall underneath the television. The wooden sign reads "HOME." ECF No. 6-14, at 1.

[4] Bell-Zuccarelli moves to exclude Defendants' exhibits because "[t]his case is a case of constitutional right violation, not [a] Maryland Residential Code violation." ECF No. 14, at ¶¶ 1-8. As discussed above, the scope of Bell-Zuccarelli's constitutionally cognizable property interest stems from state zoning law, so Defendants' exhibits are directly relevant to this case. She also argues that photographs of the inside of the shed, ECF No. 6-11, were illegally obtained by the City of Gaithersburg, who seized her property without a warrant. *See id.* at ¶ 9. Even assuming Bell-Zuccarelli's allegation had merit, the exclusion of these photographs would not alter the Court's conclusions, which are based on the other exhibits, including the newspaper photographs in ECF No. 6-9.

property interest in second single family dwelling, because she has no "legitimate claim of entitlement" under state or municipal law to use and maintain an accessory structure as a second single family dwelling.

Because Bell-Zuccarelli has no protected property interest, there is no need to consider whether the City's alleged deprivation of that interest occurred without with "due process." *See Greenspring*, 232 F.3d at *7. Beyond that, the Court notes that both Notices to Correct Violations expressly provided Bell-Zuccarelli with notice of her right to have the City's actions reviewed by the City's Board of Appeals, which has the power to decide appeals of determinations made by the City's Planning and Code Administration department. *See* City Code § 24-187. There is no indication in the record that Bell-Zuccarelli ever availed herself of this process.

Accordingly, Bell-Zuccarelli's Motion to Exclude Exhibits, ECF No. 14, is **DENIED** and Defendants' Motion for Summary Judgment, ECF No. 6, is **GRANTED**.

### E.

Bell-Zuccarelli has moved to amend her Complaint to "include [a] violation of her 4th Amendment right," complaining "that the City of Gaithersburg seized her property with[out] a warrant and probable cause[] when the City of Gaithersburg condemned her shed and denied her access to it," ECF No. 15, but the Motion is pointless.

Leave to amend should be denied under Federal Rule of Civil Procedure 15(a) "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Mackie v. Jewish Found. for Grp. Homes*, 2011 WL 1770043, at *10 (D. Md. May 9, 2011) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile if it would not survive a

motion to dismiss or for summary judgment. *Id.* (citing *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007)).

The Fourth Amendment's protections against unreasonable seizures clearly extend to real property, and apply to temporary and partial seizures. *See Presley v. City Of Charlottesville*, 464 F.3d 480, 483, 487 (4th Cir. 2006). The Supreme Court has held that a seizure of property occurs whenever "there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 487 (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). But even when a seizure of property occurs, reasonableness remains the ultimate standard under the Fourth Amendment. As is true in other circumstances, the reasonableness determination will reflect a "careful balancing of governmental and private interests." *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992).

Here, the City of Gaithersburg issued two Official Notices to Correct Violations to Bell-Zuccarelli. These Notices instructed her to cease the use of the shed as a single family dwelling, to cease and desist occupancy of the shed unless or until the structure would be restored to the condition approved by the September 27, 2012 permit, and to correct specific electrical and structural violations. The Notices explained that failure to comply would result in the issuance of fines or legal action. There is no indication in the proposed Amended Complaint or the record before the Court that the City physically denied Bell-Zuccarelli access to the structure.

The Court will assume without deciding that the City's actions constituted a seizure of property cognizable under the Fourth Amendment. However, as discussed above, there is no genuine dispute that as of January 16, 2014, the accessory structure on Bell-Zuccarelli's property was arranged to provide living facilities for one or more families, indisputably in violation of the City Code. The City Planning and Code Administration responded by issuing Notices to Correct

Violations, which provided instructions on the nature of the violations, the steps necessary to obtain approval of the corrections, the potential sanctions for failing to comply, and the process by which Bell-Zuccarelli could appeal the Planning and Code Administration's determination. The Court finds that that the issuance of these Notices reflected a reasonable balance of governmental and private interests. Indeed, it is difficult to imagine a more straightforward and reasonable exercise of municipal zoning enforcement authority. To the extent that the City's actions at issue might constitute a seizure, the seizure was a reasonable one.

Accordingly, Bell-Zuccarelli's Motion to Amend the Complaint is **DENIED** as futile.

A separate Final Order of Judgment will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

March ___, 2015